UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

DAVID L. JAMERSON,

                    Plaintiff,                    Case No. 2:16-cv-229

v.                                                Honorable Gordon J. Quist

JEFF CROMWELL, et al.,

                    Defendants.
_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Discussion

I.      Factual allegations

       Plaintiff David L. Jamerson, a Michigan state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42

U.S.C. § 1983 against Defendants Corrections Officer Jeff Cromwell, Unknown Parties named as "LMF Staff Officers," Supervisor Pat Soeltner, Corrections Officer G. Fielding, Corrections Officer M. Albright, Corrections Officer Larry S. Orr, Corrections Officer Frank Herman, Corrections Officer Michael Stimac, Corrections Officer Kevin Thomas, Sergeant Unknown Bone, Corrections Officer Unknown Penman, Resident Unit Manager Unknown Lindemuth, Deputy Warden Unknown Rutter, Deputy Warden Anthony L. Immel, Deputy Warden Scott B. Sprader, Warden Catherine Bauman, Corrections Officer Kevin Thomma, Captain Walter W. Smith, and Officer D. Kurth.

Plaintiff alleges that on April 7, 2013, while he was confined at the Alger Correctional Facility (LMF), Defendant Kurth wrote a false misconduct ticket on Plaintiff. Defendant Bone called Plaintiff to the officer's room to review the ticket with him. Plaintiff states that he had previously told Defendant Lindemuth and another sergeant that he did not want to be called out for any of Defendant Kurth's "fake tickets." Plaintiff alleges that before Defendant Bone finished reviewing the ticket with him, Plaintiff left the office and returned to his cell. Plaintiff asserts that it was Defendant Bone's responsibility to give Plaintiff a copy of the misconduct report, but Plaintiff left before he could do so. Defendant Kurth put the misconduct report on the rail of the stairs instead of giving it to Plaintiff. As Plaintiff left to go to the shower, Defendant Kurth told him to take his ticket from the rail. Plaintiff refused, stating that he did not pick up trash. Defendant Kurth gave Plaintiff a direct order to pick up the report as Plaintiff started showering. Defendant Penman subsequently came to the shower stall and asked Plaintiff what his problem was with following orders. Plaintiff told Defendant Penman that he did not pick up trash. Defendant Penman went and got a group of prison guards. Plaintiff was ordered to back up to the shower stall door to be cuffed, but Plaintiff refused. Plaintiff also refused to put on his clothing. Defendant Crommell and the guards began threatening to "kick [Plaintiff's] ass." Defendant Lindemuth then arrived and

Plaintiff explained what had happened during the hearing and that no one had told him why he was going to the hole.  Defendant Lindemuth left the area, but returned a short time later and told Plaintiff to return to his cell and not cause anymore trouble.

Upon Plaintiff's return to his cell, Plaintiff discovered that his personal property had been packed up and placed into his duffel bag.  Later, as Plaintiff was going to chow, one of the officers who had threatened him earlier stated "You're running like a sissy now, show me if you can back up that talk about kicking the squad's ass; you're a coward and everybody on the compound knows it."  Plaintiff kept walking and the officer yelled, "I'll kick your ass myself."  As Plaintiff was leaving the chow hall, Defendant Crommell called Plaintiff for a shakedown.  Plaintiff complied and during the shakedown, Defendant Crommell threw Plaintiff's gloves on the ground and put Plaintiff's wallet in his pocket.  Defendant Crommell told Plaintiff that staff were going to teach him a lesson about talking back.  As Plaintiff was walking away, Defendant Crommell said "you don't want it like that . . . it's only one way to find out, I kick your ass or you kick mine."  Plaintiff turned and began walking toward Defendant Crommell, who radioed for back up.  When Plaintiff and Defendant Crommell were about 8 feet apart, Defendant Crommell yelled "get him."  Two officers put Plaintiff in a headlock and another officer hit Plaintiff in the head with a blunt object, causing Plaintiff to fall to his knees.  The officers then pinned Plaintiff to the ground on his belly and used a taser on him four or five times, all while punching and stomping on Plaintiff.  Plaintiff was then walked backward to the segregation unit with the handcuffs on so tightly that his arms were twisted and his hands felt as if they were breaking.  As a result of this incident, Plaintiff suffered from a large lump on his head, an injury to his eyelid, bloody wrists, three broken fingers, and a broken right thumb.

Plaintiff claims that he was denied medical treatment by Defendant Bergh and that MBP Health Care providers refused to provide Plaintiff with any treatment for his injuries. Plaintiff alleges that Defendants Bauman, Sprader, Immel, Rutter, Lindemuth, Penman, Bone, Kurth, Crommell, Thomas, Stimac, Herman, Smith, Orr, Albright, Fielding, Soeltner, and other unknown staff at LMF conspired to frame Plaintiff with felony charges. On April 8, 2013, Plaintiff was transferred to the Marquette Branch Prison (MBP). When Plaintiff received his property, he noticed that his personal property list had not been itemized. Plaintiff states that $39.75 worth of property was missing.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, costs, and equitable relief.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Court notes that state statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law.  *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer*, 98 F.3d at 220.[1]

---

[1]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute.  *Id.* at 382.

Plaintiff's complaint is untimely.  He asserts claims arising in April of 2013.  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, his claims accrued in April of 2013.  However, he did not file his complaint until October 14, 2016, six months past Michigan's three-year limit.[2]  Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).   Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations.  *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).  The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate.  *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000).  Accordingly, Plaintiff's action must be dismissed as frivolous.

---

[2]Plaintiff's complaint was received by this Court on October 18, 2016.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing.  *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997).  Plaintiff dated his application on October 14, 1998.  Thus, it must have been handed to prison officials for mailing some time between October 14 and 18.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  January 30, 2017                          /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE