UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DAVID L. JAMERSON,

                Plaintiff,

v.

JEFF CROMMELL et al.,

                Defendants.

_____/

Case No. 2:16-cv-229

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Soeltner, Fielding, Albright, Orr, Heyrman, Stimac, Thomas, Bone, Denman, Lindemuth, Rutter, Immel, Sprader, Bauman, Thomma, Smith, and Kurth. The Court will serve the complaint against Defendant Crommell.

**Discussion**

### I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Defendants Corrections Officer Jeff Cromwell, Unknown Parties named as "LMF Staff Officers," Supervisor Pat Soeltner, Corrections Officer G. Fielding, Corrections Officer M. Albright, Corrections Officer Larry S. Orr, Corrections Officer Frank Herman, Corrections Officer Michael Stimac, Corrections Officer Kevin Thomas, Sergeant Unknown Bone, Corrections Officer Unknown Denman, Resident Unit Manager Unknown Lindemuth, Deputy Warden Unknown Rutter, Deputy Warden Anthony L. Immel, Deputy Warden Scott B. Sprader, Warden Catherine Bauman, Corrections Officer Kevin Thomma, Captain Walter W. Smith, and Officer D. Kurth.

Plaintiff's complaint was initially dismissed by the court on January 30, 2017, as being barred by the pertinent statute of limitations. *See* ECF Nos. 10 and 11. Plaintiff subsequently filed a motion to alter or amend judgment, which was granted on April 26, 2017. *See* ECF No. 14. As noted in the January 30, 2017, opinion, Plaintiff alleges that on April 7, 2013, Defendant Kurth wrote a false misconduct ticket on Plaintiff. Defendant Bone called Plaintiff to the officer's room to review the ticket with him. Plaintiff states that he had previously told Defendant Lindemuth and another sergeant that he did not want to be called out for any of Defendant Kurth's "fake tickets." Plaintiff alleges that before Defendant Bone finished reviewing the ticket, Plaintiff left the office and returned to his cell. Plaintiff asserts that it was Defendant Bone's responsibility to give Plaintiff a copy of the misconduct report, but Plaintiff left before he could do so. Defendant

Kurth put the misconduct report on the rail of the stairs instead of giving it to Plaintiff. As Plaintiff

left to go to the shower, Defendant Kurth told him to take his ticket from the rail. Plaintiff refused,

stating that he did not pick up trash. Defendant Kurth gave Plaintiff a direct order to pick up the

report as Plaintiff started showering. Defendant Denman subsequently came to the shower stall

and asked Plaintiff what his problem was with following orders. Plaintiff told Defendant Denman

that he did not pick up trash. Defendant Denman went and got a group of prison guards. Plaintiff

was ordered to back up to the shower stall door to be cuffed, but Plaintiff refused. Plaintiff also

refused to put on his clothing. Defendant Crommell and the guards began threatening to "kick

[Plaintiff's] ass." Defendant Lindemuth then arrived and Plaintiff explained what had happened

during the hearing and that no one had told him why he was going to the hole. Defendant

Lindemuth left the area, but returned a short time later and told Plaintiff to return to his cell and

not cause anymore trouble.

Upon Plaintiff's return to his cell, Plaintiff discovered that his personal property

had been packed up and placed into his duffel bag. Later, as Plaintiff was going to chow, one of

the officers who had threatened him earlier stated "You're running like a sissy now, show me if

you can back up that talk about kicking the squad's ass; you're a coward and everybody on the

compound knows it." Plaintiff kept walking and the officer yelled, "I'll kick your ass myself." As

Plaintiff was leaving the chow hall, Defendant Crommell called Plaintiff for a shakedown.

Plaintiff complied and during the shakedown, Defendant Crommell threw Plaintiff's gloves on the

ground and put Plaintiff's wallet in his pocket. Defendant Crommell told Plaintiff that staff were

going to teach him a lesson about talking back. As Plaintiff was walking away, Defendant

Crommell said "you don't want it like that . . . it's only one way to find out, I kick your ass or you

kick mine." Plaintiff turned and began walking toward Defendant Crommell, who radioed for

3

back up.  When Plaintiff and Defendant Crommell were about 8 feet apart, Defendant Crommell yelled "get him."  Two officers put Plaintiff in a headlock and another officer hit Plaintiff in the head with a blunt object, causing Plaintiff to fall to his knees.  The officers then pinned Plaintiff to the ground on his belly and used a taser on him four or five times, all while punching and stomping on Plaintiff.  Plaintiff was then walked backward to the segregation unit with the handcuffs on so tightly that his arms were twisted and his hands felt as if they were breaking.  As a result of this incident, Plaintiff suffered from a large lump on his head, an injury to his eyelid, bloody wrists, three broken fingers, and a broken right thumb.

Plaintiff claims that he was subsequently denied medical treatment by LMF Nurse Bergh and that MBP Health Care providers refused to provide Plaintiff with any treatment for his injuries.  However, Plaintiff fails to name Bergh or other health professionals as Defendants, nor does Plaintiff make any specific factual allegations against these individuals.  Plaintiff alleges that Defendants Bauman, Sprader, Immel, Rutter, Lindemuth, Denman, Bone, Kurth, Crommell, Thomas, Stimac, Herman, Smith, Orr, Albright, Fielding, Soeltner, and other unknown staff at LMF conspired to frame Plaintiff with felony charges.  On April 8, 2013, Plaintiff was transferred to the Marquette Branch Prison (MBP).  When Plaintiff received his property, he noticed that his personal property list had not been itemized.  Plaintiff states that $39.75 worth of property was missing.

Plaintiff claims that Defendants violated his rights under the Eighth and Fourteenth Amendments.  Plaintiff seeks compensatory and punitive damages, costs, and equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

4

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendant Kurth wrote a false misconduct ticket on him on April 7, 2013. To the extent that Plaintiff is claiming a due process violation, this claim is properly dismissed. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his misconduct. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Plaintiff also claims that $39.75 worth of his property was lost or stolen when he was transferred to the Marquette Branch Prison in violation of his due process rights. The Court notes that this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property

by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the

8

deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's complaint will be dismissed.

Plaintiff claims that Defendants Bauman, Sprader, Immel, Rutter, Lindemuth, Denman, Bone, Kurth, Crommell, Thomas, Stimac, Herman, Smith, Orr, Albright, Fielding, Soeltner, and other unknown prison staff at LMF conspired to frame him with felony charges. Plaintiff was convicted of assaulting a prison employee after the events asserted in the instant complaint. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=138940. The federal courts are courts of limited jurisdiction, and Plaintiff has the burden of proving the Court's jurisdiction. *United States v. Horizon Healthcare*, 160 F.3d 326, 329 (6th Cir. 1998). Even where subject matter jurisdiction is not raised by the parties, the Court must consider the issue *sua sponte*. *See City of Kenosha v. Bruno*, 412 U.S. 507, 511 (1973); *Norris v. Schotten*, 146 F.3d 314, 324 (6th Cir. 1998); *Mickler v. Nimishillen & Tuscarawas Ry. Co.*, 13 F.3d 184, 189 (6th Cir. 1993).

This Court lacks subject matter jurisdiction over Plaintiff's claims regarding the alleged conspiracy to frame Plaintiff with felony charges. A federal district court has no authority to review final judgments of state-court judicial proceedings. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923). A loser in the state court may not be heard in the federal district court on complaints of injuries by a state-court judgment rendered before the federal proceeding commenced. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005). "The pertinent question in determining whether a federal district court is precluded under the *Rooker–Feldman* doctrine from exercising subject-matter jurisdiction over a claim is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment." *In re Cook*, 551 F.3d at 548. Because

Plaintiff's conspiracy claims seek to indirectly challenge the state court judgment on his assault conviction, they are properly dismissed.

The Court notes that Plaintiff's Eighth Amendment claims against Defendants Crommell and Unknown Party LMF Staff Officers for excessive force are nonfrivolous and may not be dismissed on initial review.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Soeltner, Fielding, Albright, Orr, Heyrman, Stimac, Thomas, Bone, Denman, Lindemuth, Rutter, Immel, Sprader, Bauman, Thomma, Smith, and Kurth will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Crommell.[2]

An Order consistent with this Opinion will be entered.


Dated: September 12, 2017                              /s/ Gordon J. Quist
                                                                    GORDON J. QUIST
                                                         UNITED STATES DISTRICT JUDGE

---

[2] The Court lacks sufficient information at this time to effect service upon the unknown parties. Therefore, the court will not order the prison to provide copies for service on Unknown Parties named as LMF Staff Officers. If Plaintiff discovers the name of these parties, he should file a motion to amend his complaint to include the name of those individuals.