UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID L. JAMERSON #138940,                    Case No.    2:16-cv-229

                    Plaintiff,                Hon. Gordon J. Quist
                                              U.S. District Judge

        v.

JEFF CROMMELL, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

## Introduction

This is a civil rights action brought by state prisoner David Jamerson pursuant to 42 U.S.C. § 1983.   Jamerson alleges that while he was confined at the Baraga Correctional Facility (AMF), Defendant Jeff Cromell used excessive force against him in violation of his Eighth Amendment rights.[1]   Defendant Cromell asserts that Jamerson first assaulted him by punching him in the face, head, and neck.   Other corrections officers responded to the incident and restrained Jamerson.

On January 30, 2017, this Court issued an opinion dismissing the complaint as barred by the statute of limitations period.   (ECF No. 10.)   Jamerson filed a motion for reconsideration.   (ECF No. 12.)   The Court granted that motion on April 26, 2017.   (ECF No. 14.)   On September 12, 2017, the Court issued an opinion dismissing Jamerson's claims against Defendants Soeltner, Fielding, Albright, Orr,

_____

[1]        Jamerson spelled Defendant's name as "Crommell."

- 1 -

Heyrman, Stimac, Thomas, Bone, Denman, Lindemuth, Rutter, Immel, Sprader, Bauman, Thomma, Smith, and Kurth for failure to state a claim upon which relief may be granted.   (ECF Nos. 15, 16.)   The Court ordered service of the complaint against Defendant Cromell.   (*Id*.)

Defendant Cromell moves for summary judgment.   (ECF No. 41.)   Jamerson did not respond.   The undersigned recommends that this Court grant the motion for summary judgment and dismiss this case.

### Plaintiff's Allegations

Jamerson alleges that on April 8, 2013, Defendant Cromell called Jamerson for a shakedown as he was leaving the chow hall.   During the shakedown, Defendant Cromell told Jamerson that staff were going to teach him a lesson about talking back. As Jamerson was walking away, Defendant Cromell said "you don't want it like that . . . it's only one way to find out, I kick your ass or you kick mine."   Jamerson turned and began walking toward Defendant Cromell, who yelled "get him."   Shortly thereafter, two prison guards put Jamerson in a headlock and hit him in the head with a blunt object.   The officers then pinned Jamerson to the ground and used a taser on him four or five times.   As a result of this incident, Jamerson suffered injuries to his head, eyelid, wrists, and hand.

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### Eighth Amendment Excessive Force

Jamerson's remaining claim is for excessive force against Defendant Cromell. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, a plaintiff must satisfy both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

*Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson*, 501 U.S. at 298).   "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d at 383.

While all Eighth Amendment claims involve an objective and a subjective component, the objective component is contextual and therefore varies depending on the claim asserted.   *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).   The degree of harm necessary to satisfy the objective component depends on "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).   When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.   Thus, while the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation based on excessive force has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The proper inquiry for an Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Factors that are typically considered in this determination include: (1) the relationship between the need for force and the amount of force that was used, (2) the extent of any safety threat to staff or inmates, and (3) any efforts made to temper the severity of a forceful response.   *Id*. at 321.

## Analysis

Jamerson alleges that when he was leaving the chow hall on April 8, 2013, Defendant Cromell searched him and then began to insult him.   Jamerson asserts that as he attempted to leave the area to return to his cell, Defendant Cromell followed him and then yelled "get him."   At that moment, four to six officers jumped Jamerson, dragged him to the ground, and punched and kicked him.   Defendant Cromell argues that Jamerson has fabricated this story and that, in fact, Jamerson first assaulted Defendant Cromell.   Defendant Cromell has submitted a video of the incident, Critical Incident Reports, and affidavits from witnesses to support his motion.

Defendant Cromell states that after he completed a pat down search of Jamerson, Jamerson stated, "Fuck you, you coward! You don't want me as an opponent!   You don't want me, coward-ass bitch!"   (ECF No. 42-2, PageID.302.) Defendant Cromell ordered Jamerson to return to his cell, but Jamerson continued to yell and then took a fighting stance with his fists clenched.   (*Id.* at PageID.303.) Defendant Cromell ordered Jamerson to turn around and to place his hands behind his back.   (*Id.*)   Jamerson refused and then threw multiple punches at Defendant Cromell, striking him in the jaw, neck, and head area.   (*Id.*)   Officer Thomma responded immediately and was injured in his attempt to take Jamerson to the ground. (ECF No. 42-3, PageID.311-313.)   Officer Stimac responded and deployed his Electronic Control Device, striking Jamerson in the torso.   (*Id.*)   Several other

officers responded as Jamerson continued to struggle.   Jamerson was quickly restrained and taken to health care.   (*Id.*)

The video evidence does not support Jamerson's allegations.   Only two officers initially took Jamerson to the ground and both officers sustained injuries.   Other officers responded, but no officer struck Jamerson.   The incident accelerated very rapidly, with several officers in the area responding.   Jamerson was quickly restrained and the entire incident took place over the course of about one minute. In the opinion of the undersigned, the force used by the officers was not excessive, but a necessary response to Jamerson's conduct.   In particular, the evidence of record, including the video evidence, does not establish that Defendant Cromell used excessive force against Jamerson.

At the time of the incident, Officer Stimac was monitoring the chow lines and witnessed Jamerson throwing punches and striking Defendant Cromell in the face and upper body.   (ECF No. 42-4, PageID.317.)   He also witnessed Jamerson hitting Officer Thomma.   (*Id.*)   Deputy Warden Scott Sprader observed the incident. (ECF No. 42-5, PageID.319-321.)   He saw Defendant Cromell speaking with Jamerson and pointing in the direction of Pine Unit.   Jamerson then stepped toward Defendant Cromell and threw multiple punches, striking Cromell in the jaw and head area.   (*Id.* at PageID.321.)   Deputy Warden Immel also observed the incident. (ECF No. 42-6, PageID.325.)   He also observed Defendant Cromell pointing toward Pine Unit while speaking with Jamerson.   (*Id.*)   Jamerson approached Defendant Cromell and threw multiple punches, striking him in the head area.   (*Id.*)

In the opinion of the undersigned, Jamerson has failed to establish that Defendant Cromell used excessive force against him.   The record establishes that Defendant Cromell did not strike Jamerson.   The record establishes that Defendant Cromell responded after he was struck multiple times by taking Jamerson to the ground with the assistance of Officer Thomma.   Other officers immediately arrived to assist in securing Jamerson.   In the opinion of the undersigned, the force used was responsive to Jamerson's conduct, and only minimal force was used to restrain Jamerson and gain control.

### Qualified Immunity

As an alternative argument, Defendant Cromell moves for qualified immunity from liability.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Determining whether a government official is entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?   Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).   In the opinion of the undersigned, Defendant Cromell did not violate clearly established law when he responded to Jamerson by assisting in taking him to the ground after Jamerson punched him multiple times in the head area.

## Recommendation

I respectfully recommend that the Court grant Defendant Cromell's motion for summary judgment (ECF No. 41) and dismiss this case with prejudice.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    August 14, 2019                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U.S. MAGISTRATE JUDGE

- 9 -